# CASE NO. 24-2011

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KENNETH JAMES LOWE,

Plaintiff – Appellant

v.

WALBRO LLC, a foreign limited liability company,

Defendant – Appellee.

_____

On appeal from the United States District Court for the Eastern District of
Michigan, District Court No. 1:18-cv-12835
Hon. Thomas L. Ludington

_____

## RESPONSE BRIEF ON APPEAL OF
## DEFENDANT-APPELLEE WALBRO, LLC

David M. Cessante
Brian D. Shekell
Clark Hill PLC
500 Woodward Ave., Suite 3500
Detroit, MI  48226
(313) 965-8300

Date: May 9, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT REGARDING ORAL ARGUMENT ................................................. v

STATEMENT OF JURISDICTION .................................................................... vii

COUNTER-STATEMENT OF ISSUES ............................................................... 1

STATEMENT OF THE CASE ........................................................................... 2

COUNTER-STATEMENT OF FACTS ................................................................ 5

SUMMARY OF THE ARGUMENT ................................................................... 12

STANDARD OF REVIEW ............................................................................... 15

I.   LEGAL STANDARDS ............................................................................ 15

    A.   Rule 50(b) ............................................................................... 15

    B.   Rule 59(a) ............................................................................... 17

ARGUMENT ............................................................................................... 18

I.   PLAINTIFF DID NOT PRESENT EVIDENCE THAT WOULD PERMIT A REASONABLE JURY TO FIND THAT THE AREA MANAGER POSITION WAS ELIMINATED BECAUSE OF HIS AGE ............................................................................................ 18

    A.   Plaintiff Had the Burden of Proving His Age Was a Determining Factor in the Decision to Eliminate the Area Manager Position ................................... 18

    B.   Plaintiff Did Not Prove His Age Was a Determining Factor in the Decision to Eliminate the Area Manager Position ...................................................... 19

    C.   This Court's Prior Opinion Does Not Support the Jury's Verdict ................. 32

    D.   The Cases Plaintiff Relies on in Support of His Appeal are Inapposite ......... 35

II.  ALTERNATIVELY, THE DISTRICT COURT CORRECTLY ORDERED A NEW TRIAL ............ 41

    A.   The District Court Did Not Abuse Its Discretion in Determining That the Jury's Verdict Was Against the Great Weight of the Evidence ..................... 42

    B.   The District Court Did Not Abuse Its Discretion in Determining That the Jury's Verdict Was Excessive ................................................................ 43

    C.   This Court Should Affirm the District Court's Ruling Because The Jury's Backpay and Front pay Awards Were Excessive ...................................... 48

CONCLUSION ............................................................................................ 52

# TABLE OF AUTHORITIES

## Cases

*Allen v. DaimlerChrysler Corp.*,
  2006 WL 626239 (Mich. Ct. App. Mar. 14, 2006) ............................... 35

*Armisted v. State Farm Mut. Auto. Ins. Co.*,
  675 F.3d 989 (6th Cir.2012) ................................................ 18

*Bell v. Johnson*,
  404 F.3d 997 (6th Cir.2005) ................................................ 17

*Blizzard v. Marion Tech. Coll.*,
  698 F.3d 275 (6th Cir.2012) ............................................ 26, 27

*Boler v. Earley*,
  865 F.3d 391 (6th Cir.2017) ................................................ 49

*Brocklehurst v. PPG Indus., Inc.*,
  123 F.3d 8908 (6th Cir. 1997) ...................................... 19, 30, 31

*Brooks v. Woodline Motor Freight, Inc.*,
  852 F.2d 1061 (8th Cir.1988) ................................................ 51

*Brown v. Kelsey-Hayes Co.*,
  814 F. App'x 72 (6th Cir.2020) .............................................. 25

*Bush v. Dictaphone Corp.*,
  161 F.3d 363 (6th Cir.1998) ................................................ 25

*Cassino v. Reichhold Chemicals, Inc.*,
  817 F.2d 1347 (9th Cir.1987) ................................................ 51

*Crankpark, Inc. v. Rogers Group, Inc.*,
  821 F.3d 723 (6th Cir.2016) ................................................ 41

*Culver v. CCL Label, Inc.*,
  455 F. App'x 625 (6th Cir.2012) ............................................ 15

*Davis by Davis v. Jellico Cmty. Hosp. Inc.*,
  912 F.2d 129 (6th Cir.1990) ................................................ 17

*DeBrow v. Century 21 Great Lakes, Inc.*,
  620 N.W.2d 836 (Mich.2001) ............................................... 34

*Dodson v. Imperial Motors, Inc.*,
  295 F.2d 609 (6th Cir.1961) ................................................ 23

*Downey v. Charlevoix Cnty. Bd. of Road Comm'rs*,
  576 N.W.2d 712 (Mich. Ct. App.1998) .................................. 34, 35

*Dubey v. Stroh Brewery Co.*,
  462 N.W.2d 758 (Mich. Ct. App.1990) ..................................... 30

*Epstein v. Kalvin Miller Int'l, Inc.*,
  139 F.Supp.2d 469 (S.D.N.Y.2001) ......................................... 47

*Ercegovich v. Goodyear Tire & Rubber Co.*,
  154 F.3d 344 (6th Cir.1998) ............................................ 36, 37

*Fischer v. United Parcel Service*,
  390 Fed.Appx. 465 (6th Cir.2010) .......................................... 47

*Gasperini v. Ctr. for the Humanities, Inc.*,
  518 U.S. 415 (1996) ..................................................... 17, 18

*Gilbert v. DaimlerChrysler Corp.*,
  685 N.W.2d 391 (Mich.2004) ........................................... 43, 44

*Gomez v. Great Lakes Steel Div., Nat. Steel Corp.*,
  803 F.2d 250 (6th Cir.1986) ..................................................................48

*Hansard v. Pepsi–Cola Metropolitan Bottling Co.*,
  865 F.2d 1461 (5th Cir.1989) ................................................................50

*Henry v. Outback Steakhouse of Fla., LLC*,
  2017 WL 1382292 (E.D. Mich. Apr. 18, 2017) ....................................30

*Hermann v. MidMichigan Health*,
  2012 WL 205839 (Mich. Ct. App. Jan. 24, 2012) ................................27

*Hetzel v. Cnty. of Prince Williams*,
  89 F.3d 169 (4th Cir.1996) ....................................................................47

*Hubbell v. FedEx Smartpost, Inc.*,
  2018 WL 1288988 (E.D. Mich. Mar. 13, 2018) ..................................44

*Hutchinson v. Fiserv-Cir, Inc.*,
  121 F.3d 708 (6th Cir.1997) ..............................................18, 21, 32

*In re Brown*,
  342 F.3d 620, 626-27 (6th Cir.2003) ....................................................15

*Kusens v. Pascal, Co.*,
  448 F.3d 349 (6th Cir.2006) ..................................................................15

*Leisure Caviar, LLC v. U.S. Fish and Wildlife Service*,
  616 F.3d 612 (6th Cir.2010) ............................................................42, 43

*Longs v. Ford Motor Co.*,
  2011 WL 13161601 (W.D. Tenn. Feb. 10, 2011) ................................48

*Lytle v. Malady*,
  579 N.W.2d 906 (Mich.1998) ................................................................19

*Matras v. Amoco Oil Co.*,
  385 N.W.2d 586 (Mich.1986) ..........................................................19, 32

*McMahon v. Libbey–Owens–Ford Co.*,
  870 F.2d 1073 (6th Cir.1989) ..........................................................49, 50

*McPherson v. Kelsey*,
  125 F.3d 989 (6th Cir.1997) ........................................................42, 43, 48

*Mich. First Credit Union v. Cumis Ins. Soc'y, Inc.*,
  641 F.3d 240 (6th Cir.2011) ..................................................................18

*Miller v. Alldata Corp.*,
  14 F. App'x 457 (6th Cir.2001) ............................................................42

*Moorer v. Baptist Memorial Health Care System*,
  398 F.3d 469 (6th Cir.2005) ..................................................................44

*Palenkas v. Beaumont*,
  443 N.W.2d 354 (Mich.1989) ................................................................43

*Park W. Galleries, Inc. v. Hochman*,
  692 F.3d 539 (6th Cir.2012) ..................................................................17

*Paultich v. Detroit Edison Co.*,
  528 N.W.2d 200 (Mich. App.1995) ..................................................46, 47

*Pinney Dock & Transport Co. v. Penn Cent. Corp.*,
  838 F.2d 1445 (6th Cir.1988) ................................................................17

*Regal Cinemas, Inc. v. W & M Properties*,
  90 Fed. App'x 824 (6th Cir.2004) ........................................................16

*Rousch v. KFC Nat. Management Co.*,
  10 F.3d 392 (6th Cir.1993) ....................................................................52

*Rowan v. Lockheed Martin Energy Sys., Inc.*,
   360 F.3d 544 (6th Cir.2004) ................................................................. 27

*Simpson v. Midland-Ross Corp.*,
   823 F.2d 937 (6th Cir.1987) .................................................................. 18

*Smith v. Department of Health and Human Services*,
   2022 WL 880455 (Mich. Ct. App. March 24, 2022) ...................... 39, 40

*Sobotka v. Olympia Ent., Inc.*,
   2025 WL 511120 (Mich. Ct. App. Feb. 14, 2025) ......................... 38, 39

*Stafford v. Elect. Data Sys. Corp.*,
   749 F. Supp. 781 (E.D. Mich.1990) ...................................................... 50

*Steffes v. Pepsi-Cola Pers., Inc.*,
   2001 WL 1631407 (6th Cir. Dec. 18, 2001) .......................................... 48

*United States v. Hughes*,
   505 F.3d 578 (6th Cir. 2007) ................................................................ 42

*Waldo v. Consumers Energy Co.*,
   726 F.3d 802 (6th Cir.2013) .................................................................. 18

*Weber v. Infinity Broadcasting Corp.*,
   2005 WL 3726303 (E.D. Mich. Dec. 14, 2005) ............................ 45, 46

*Wells v. O'Malley*,
   106 F. App'x 319 (6th Cir.2004)....................................................... 16, 17

*Williams v. Dep't of Health & Hum. Servs.*,
   2021 WL 5027962 (Mich. Ct. App. Oct. 28, 2021) .................. 19, 38, 39

*Wilson v. Firestone Tire & Rubber Co.*,
   932 F.2d 510 (6th Cir.1991) .................................................................. 19

*Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir.1989)................................ 48

## **Rules**

Rule 50.................................................................................... 15, 16, 34, 41

Rule 59............................................................................................ 17, 49, 52

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Walbro LLC respectfully requests oral argument in this matter because, in addition to the briefs and record on file, oral argument will aid with the decisional process.  Fed. R. App. P. 34(a).

## STATEMENT OF JURISDICTION

Defendant-Appellee Walbro LLC does not oppose the basis for this Court's jurisdiction set forth in Plaintiff-Appellant's brief on appeal.

## COUNTER-STATEMENT OF ISSUES

I.     WHETHER THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DECISION GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW WHERE NO REASONABLE JURY COULD CONCLUDE BASED ON THE EVIDENCE AT TRIAL THAT PLAINTIFF'S AGE WAS A MOTIVATING FACTOR IN THE DECISION TO ELMINATE THE AREA MANAGER POSITION.

Defendant-Appellee states: "Yes."

Plaintiff/Appellant says "No."

II.     ALTERNATIVELY, WHETHER THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DECISION GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL UNDER FED. R. CIV. P. 59(a) WHERE THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF EVIDENCE AND WAS EXCESSIVE.

Defendant-Appellee states: "Yes."

Plaintiff/Appellant says "No."

## STATEMENT OF THE CASE

This is an age discrimination case under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") that was tried before the Honorable Thomas L. Ludington in October 2023. The case went to trial because this Court reversed the District Court's decision granting summary judgment in favor of Walbro in an August 26, 2020 Opinion.  The reversal was based on Plaintiff's deposition testimony that when he asked why his position was being eliminated during the separation meeting, Walbro's General Manager, Tom Davidson, allegedly said, "well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other."  This Court found that Davidson's alleged statement was direct evidence of age discrimination and "*by itself* could lead a reasonable jury to find that the company acted on a predisposition to discriminate on the basis of age in taking its adverse employment action against [Plaintiff]." (Emphasis added). As such, this Court remanded the case for trial.

During the trial, however, *Plaintiff admitted that Davidson never said anything about his age or retirement during the separation meeting*:

> Q. Your words, this is what you said Mr. Davidson testified [sic] to.  "Sit down.  The company is going in a different direction. Your job is being eliminated.  You can go yours." That's what he said according to you?
>
> A. Correct.
>
> Q. No mention of age or retirement in that - - in those sentences?

A. Correct.

Q. So when Mr. Davidson said - - testified, I should say, he testified under oath that he didn't say anything about your age or retirement during the separation meeting, that's truthful testimony?

A. That's truthful, yes.

Q. Okay. So you admit today, in front of this jury, that Mr. Davidson never said anything about age or retirement during the separation meeting, right?

A. Not during the separation meeting.

*[ECF No._118, PageID.2931].*

Based on this testimony, the District Court concluded in its Opinion granting Defendant's Motion for Judgment as a Matter of Law that "[t]his case presents an unusual set of circumstances under which the evidence evaluated at summary judgment was *not* the same evidence the jury heard during trial." *[ECF No._143, PageID.4114 (emphasis in original)].* Specifically, "the direct evidence the Sixth Circuit identified in its 2020 Opinion --- Plaintiff's testimony that Davidson told him he was being terminated *because* Plaintiff was 'kind of getting up there in years' and was 'at retirement age' --- was *not* presented to the jury during the trial." *[Id., PageID.4112 (emphasis in original)].* "To the contrary, Plaintiff testified that Davidson did not say *anything* about age or retirement during the termination meeting." *[Id., PageID.4114 (emphasis in original)].* The District Court properly concluded that "there was no direct evidence of age discrimination for the jury to consider …." *[Id.].*

3

After recognizing that Plaintiff's perjured deposition testimony was not presented to the jury, the District Court analyzed whether Plaintiff presented sufficient evidence at trial to establish a *prima facie* case using the indirect-evidence framework. *[Id., PageID.4114-4115]*. The District Court properly concluded he did not, stating: "Plaintiff did not identify *any* similarly, situated person outside his protected class who was treated differently. And his position was not filled by a younger employee.  To the contrary, Plaintiff's position was not filled by *anyone,* because the area manager position was eliminated." *[Id., PageID.4118 (emphasis in original)]*.

This meant "the *only* evidence Plaintiff presented at trial in an attempt to establish 'circumstances giving rise to an inference of discrimination' are the comments allegedly made by Davidson to Plaintiff at the 40-year recognition ceremony a year-and-a-half before his termination and the other unspecified instances during which Davidson referred to Plaintiff as 'the old guy' between October 2016 and June 2018."  *[Id. (emphasis in original)]*. As the District Court properly held, these comments were insufficient to give rise to an inference of discrimination because they were too "remote in time from Plaintiff's termination and not, in fact, made about Plaintiff's termination." *[Id., PageID.4119]*. As such, the District Court granted Walbro's Motion for Judgment as a Matter of Law or Alternatively, Motion for a New Trial. On November 20, 2024, Plaintiff filed his Notice of Appeal.

## COUNTER-STATEMENT OF FACTS

**The Parties**

Walbro manufactures engine management and fuel systems. It is headquartered in Arizona and has a facility in Cass City, Michigan.

Plaintiff was employed by Walbro in a variety of roles from 1976 to 2013 at its Cass City facility. *[ECF No._117, PageID.2814-2818].* In April 2014, Plaintiff was promoted to the position of Area Manager. *[Id., PageID.2822].* As Area Manager, Plaintiff's primary responsibility was to oversee maintenance of the equipment in the facility. *[ECF No._118, PageID.2943].*

**Davidson Is Hired as General Manager**

In June 2016, Tom Davidson was hired as the General Manager of the Cass City facility. *[ECF No._117, PageID.2755].* At the time of Davidson's hire, the Cass City facility was not profitable and was missing budget. *[Id., PageID.2756-2758, 2796].*

During his tenure, Davidson hired several individuals into supervisory positions who were over the age of 50. *[Id., PageID.2764-2765].* This was consistent with the Cass City workforce, which was "older." *[ECF No._116, PageID.2552; ECF No._117, PageID.2762-2763].* As such, Plaintiff did not stand out in terms of his age or tenure. *[ECF No._117, PageID.2762].* Other than Plaintiff, no salaried employees lost their jobs while Davidson was General Manager. *[Id., PageID.2763].*

**Davidson Assumes Oversight of the Blow Mold Machines and Robotics**

Around 2016, the Cass City plant began to experience significant growth in blow molding and robotics. *[ECF No._118, PageID.2941-2942]*. By the time Davidson was hired, fuel tanks, which are made using blow molding machines, comprised almost 70% of the business at the Cass City plant. *[Id.]*. However, the blow mold machines were not running at high efficiency, were producing a large amount of scrap, and there was a lot of downtime. *[Id.; ECF No._117, PageID.2756-2758, 2719, 2796]*.

This led to several maintenance issues with the blow molding machines. When Davidson asked Plaintiff about these issues, Plaintiff "never had an adequate answer." *[ECF No._117, PageID.2715]*. Davidson addressed this with Plaintiff multiple times and told him he needed to be more engaged with the blow molding machines. *[Id., PageID.2768-2769]*. After nothing changed, Davidson began going directly to Rick Osterbeck (Senior Technician) and Nate Windsor (Manufacturing Engineer I) with maintenance questions. *[Id., PageID.2715-2717, 2766-2777]*. Eventually, Davidson removed Osterbeck and Windsor from Plaintiff's supervision and had them report directly to him. *[Id., PageID.2714, 2768-2770]*. Davidson made this decision, in part, to help Plaintiff because he was overwhelmed. *[Id., PageID.2765-2776]*. Davidson told Plaintiff to focus on the pump assembly lines in

the north end of the plant.[1] *[Id., PageID.2772-2774; ECF No. 118, PageID.2946].* Notably, Plaintiff did not challenge the decision or ask for training. *[ECF No._118, PageID.2947].*

**Plaintiff is Not Included in a Reduction in Force or Talent Upgrade**

In October 2016, Walbro implemented a reduction in force. *[ECF No._117, PageID.2703, 2777].* Although several positions were eliminated, Walbro elected to retain Plaintiff. *[Id.].* Davidson did not make any recommendation that Plaintiff be included in the RIF. *[Id.]* Plaintiff was 58 years old at the time. *[ECF No._118, PageID.2941].*

In November 2017, Walbro implemented a talent upgrade where lower performing employees were replaced. *[ECF No._117, PageID.2700-2703].* As part of the process, Davidson ranked his employees, including Plaintiff, who was in the bottom ten percent. *[Id., PageID.2703, 2754-2755, 2781].* Although Davidson could have included Plaintiff in the talent upgrade, he did not do so because he felt Plaintiff could still support him. *[Id., PageID.2754-2756, 2781-2782, 2798, 2809-2810].* Plaintiff was 59 years old at the time. *[ECF No._118, PageID.2941].*

**Walbro's New Senior Human Resources Manager Determines the Area Manager Position Is Not Needed**

On March 27, 2018, Davidson hired Debby Rard, who was 57 years old at the time, as the Senior Human Resources Manager at the Cass City facility. *[ECF*

---

[1] Similar issues occurred after Plaintiff became solely responsible for maintenance of the machines in the north end. *[ECF No._117, PageID.2779-2781].*

*No._116, PageID.2548].* Shortly after her hire, Rard reviewed organizational charts and noticed there was a high-salaried Area Manager position with "no direct reports." *[Id., PageID.2555-2556].* Rard questioned the need for this position because it did not make business sense. *[Id., PageID.2497, 2511, 2555-2559].* As such, she spoke to Davidson about the need for the position, which is when she learned that he and others were questioning the need for the position as well. *[Id., PageID.2559; ECF No._117, PageID.2784-2785].*

**Rard Receives Complaints About Plaintiff**

In April 2018, several employees began complaining to Rard that Plaintiff was bullying them and engaging in boorish behavior. *[ECF No._116, PageID.2497-2499, 2503-2505, 2515-2517, 2559, 2566-2568; ECF No._117, PageID.2691-2692].* In response, Rard created an "Observed Notes" document and made Davidson aware of the complaints. *[ECF No._117, PageID.2784-2785].* However, she did not formally investigate the complaints because they were discussing the possibility of eliminating Plaintiff's position. *[ECF No._116, PageID.2560].* Rard testified that if Walbro did not move forward with the position elimination, she would have "pivoted" and conducted a formal investigation. *[Id., PageID.2509, 2522, 2560-2561].*

**Rard Receives Another Complaint About Plaintiff**

On June 19, 2019, Davidson overheard Osterbeck tell other employees that Plaintiff made a comment about Osterbeck giving oral sex to an outside consultant and "sucking him raw." *[ECF No._117, PageID.27888-2789].* This was days after

Walbro conducted anti-harassment training at the Cass City facility for its entire workforce. *[Id.; ECF No._116, PageID.2568-2570]*. Davidson immediately brought Osterbeck to Rard's office to report the comment. *[ECF No._116, PageID.2519-2520, 2568]*.

**Walbro Eliminates the Area Manager Position**

After receiving Osterbeck's complaint, Rard contacted Adam Arkells, Walbro's Vice President of Human Resources, and Will Gaun, Walbro's Director of Human Resources, to inform them what had been reported. *[Id., PageID.2570-2571]*. Davidson was also on the call. *[Id.]* Rard asked for "direction" as they either needed to eliminate Plaintiff's position, as she recommended, or she would investigate the complaints against Plaintiff. *[Id.]*.

Because discussions about eliminating Plaintiff's position were already underway, Walbro decided to move forward with the position elimination. *[Id., PageID.2570-2571; ECF No._117, PageID.2688, 2789-2790]*. The decision was made by Davidson, Rard, Arkells, and Mike Coyle, Walbro's COO. *[ECF No._116, PageID.2574-2575; ECF No._117, PageID.2720, 2784]*. While Plaintiff's position would have been eliminated even if these complaints had not been made, the complaints accelerated the timing of the position elimination. *[ECF No._117, PageID. 2690-2691,2789-2790]*.

At the time the Area Manager position was eliminated, only janitors and tool crib were reporting to Plaintiff. *[Id., PageID.2716]*. Walbro never backfilled the

position. *[ECF No._116, PageID.2582]*. Plaintiff's remaining job duties were absorbed by other employees. *[ECF No._117, PageID.2716-2717, 2783-2784]*.

**Walbro Eliminates the Area Manager Position**

On June 28, 2018, Plaintiff met with Rard and Davidson. Reading from a script given to him by Rard, Davidson informed Plaintiff that his position was being eliminated. *[ECF No._116, PageID.2532-2536; ECF No._117, PageID.2724, 2790-2791]*. Plaintiff admitted during the trial that Davidson did not say anything about his age or retirement during the meeting. *[ECF No._117, PageID.2838; ECF No._118, PageID.2931]*. This is consistent with Davidson's testimony that he never made any comments about Plaintiff's age. *[ECF No._117, PageID.2729]*.

While Plaintiff testified that Rard twice mentioned the word "age" during the meeting, he also testified that Rard said the Area Manager position was ***not*** being eliminated because of his age, race, religion, or any other protected characteristic.[2] *[Id., PageID.2838-2839; ECF No._118, Page ID.2866-2868, 2929-2932]*. Further, Plaintiff admitted (in response to his own attorney's question) that Rard never made any ageist comments:

> Q. So we have - - and Ken, did anyone other than Davidson at Walbro ever make – directly make ageist comments to you?
>
> A. Never.

---

[2] Rard and Davidson testified that the word "age" was never mentioned during the separation meeting. *[ECF No._116, PageID.2534-2535, 2573-2574; ECF No._117, PageID.2730, 2752-2753, 2791]*.

*[ECF No._118, PageID.2864].*

**The Jury's Unsupported and Excessive Economic Damages Verdict**

On October 31, 2023, the jury returned a verdict in favor of Plaintiff. It awarded him backpay of $443,418.00, front pay of $18,112.00 for 2023, and front pay of $108,672.00 each year from 2024 through 2028, for a total front pay award of $561,472.00. *[ECF No._111, PageID.2247].*

At trial, Plaintiff admitted there is not a single document showing that he applied for any job between November 13, 2020 and May 31, 2021. *[Id., Page ID.2927].* Nor did Plaintiff testify that he applied for a job during this period. Plaintiff also admitted that other than unemployment insurance agency submissions, which were likely fraudulent *[See e.g., ECF No._126, PageID.3674-75]*, he has no documents showing he applied to a single job from June 1, 2021 through the date of his trial testimony. *[Id., Page ID.2928].* There is no evidence that Plaintiff applied for a job after November 13, 2020.

**The Jury's Unsupported and Excessive Noneconomic Damages Verdict**

The jury also awarded Plaintiff $1,300,000 in noneconomic damages, including $1,000,000 in noneconomic damages for the time period of June 28, 2018 through October 31, 2023 and another $300,000 for noneconomic damages for the remainder of 2023 through 2028. *[ECF No._111, PageID.2448].*

It did so despite Plaintiff's admission that he has not treated with any mental healthcare providers since his separation from Walbro and has no intention of doing

11

so. *[ECF No._118, PageID.2890]*. Plaintiff also admitted he has never been prescribed any medication for mental health issues and would seek treatment if he "needed help:"

> Q.  *** If you're feeling issues with your mental health, you should probably get help, don't you think?
>
> A.  If I needed help, yes.

*[ECF No._118, PageID.2890-91]*.

Plaintiff further admitted he: (i) was able to obtain a job less than one month after his separation from Walbro, (ii) continues to see his children, grandchildren, and siblings on a regular basis and with the same frequency that he saw them before his separation from Walbro, (iii) continues to go hunting, (v) went on vacation to Florida with his fiancé's family, and (vi) continues to go to his fiancé's cabin *[Id., PageID.2892-95]*.

## SUMMARY OF THE ARGUMENT

The District Court concluded that Plaintiff did not provide evidence at trial that his age was a determining factor in the decision to eliminate the Area Manager position. This District Court was correct. Plaintiff did not provide any evidence at trial (i) rebutting Davidson and Rard's testimony that the Area Manager position was not needed at the time it was eliminated, (ii) rebutting Davidson and Rard's testimony that his age had nothing to do with the decision to eliminate the position, (iii) showing that he was treated differently than a similarly, situated younger employee, or (iv) showing that he was replaced.

12

Nor did Plaintiff present evidence showing Davidson or anyone else at Walbro was predisposed to discriminate against older employees. The unrebutted testimony instead showed that Plaintiff was not included in a 2016 reduction in force or a 2017 talent upgrade when he was 58 and 59 years old, respectively, that Davidson hired several employees in their mid-to-upper 50s, and that Davidson never terminated any other salaried employees, even though the Cass City facility had an "older" workforce. The evidence showed there was no animus against Plaintiff or any other "older" employees.

Given the lack of evidence, Plaintiff questioned Walbro's business judgment and played to the sympathy of the jury. Neither of these approaches satisfy Plaintiff's burden. The same is true regarding the alleged ageist statements Plaintiff relies on. Unlike at his deposition, Plaintiff admitted at trial that Davidson never said anything about his age or retirement during the separation meeting. Given Plaintiff's other admission that Davidson is the only person at Walbro who made any alleged comments about his age, this left only the alleged comment during the award ceremony about Plaintiff being at Walbro longer than Davidson had been alive and the alleged "old man/guy" and "you're losing a step" comments. However, none of these alleged comments were made close in time to the decision to eliminate the Area Manager position, none of them have any connection to that decision, and none of them evince any animus towards Plaintiff because of his age. The District Court was correct when it held none of these alleged comments were sufficient to give rise to

an inference of discrimination. The District Court's holding is buttressed by Plaintiff's testimony that he viewed the alleged comment during the award ceremony as a "joke" and Davidson's attempt to "be funny."

Plaintiff's attempt to undermine this conclusion by pointing to this Court's prior decision in this matter is unpersuasive. Plaintiff admitted at trial that the alleged ageist comment this Court relied on when reversing summary judgment was never made. This Court's prior analysis and discussion relating to that alleged comment have no application to the jury's verdict or this appeal.  The same is true regarding the other portion of this Court's Opinion relating to mixed motive, which is an evidentiary standard used at summary judgment in cases involving direct evidence that *places the burden of proof on the defendant* to show it would have made the same decision even if impermissible considerations had not played a role in the decision. That standard has no application here because no direct evidence was presented at trial and the burden of proof at trial rested solely with Plaintiff; not Walbro. Plaintiff cannot use this Court's analysis and discussion of entirely different issues, evidence and inapplicable legal standards at the summary judgment stage to bootstrap his appeal.

A *de novo* review confirms the District Court's decision was correct. Plaintiff failed to meet his burden of proving that his age was a motivating factor in the decision to eliminate the Area Manager position.  Plaintiff also failed to provide

evidence to support the jury's damages award.  This Court should affirm the District Court's decision vacating the jury's verdict.

## STANDARD OF REVIEW

### I.    LEGAL STANDARDS

#### A.    Rule 50(b)

"This Court reviews de novo a district court's grant of judgment as a matter of law under Rule 50(a)." *Culver v. CCL Label, Inc.*, 455 F. App'x 625, 627 (6th Cir.2012). "In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action." *Kusens v. Pascal, Co.*, 448 F.3d 349, 360 (6th Cir.2006).  *See also In re Brown*, 342 F.3d 620, 626-27 (6th Cir.2003) ("In a diversity action such as this, a state law standard of review is applied when a Rule 50(b) motion is based on a challenge to the sufficiency of the evidence necessary to support the jury's verdict.")

While Plaintiff makes numerous arguments in his Appeal Brief that the District Court erred in vacating the jury's verdict because this Court previously reversed the District Court's decision granting summary judgment in favor of Walbro, "[w]hen a district court (or a court of appeals) denies a summary judgment motion, the ruling does not bind the district court when it is later called upon to decide a Rule 50 motion." *Wells v. O'Malley*, 106 F. App'x 319, 323 (6th Cir.2004). In fact, as this Court explained in *Regal Cinemas, Inc. v. W & M Properties*, 90 Fed. App'x 824,

829 (6th Cir.2004), it is erroneous for a district court to deny a Rule 50 motion because the plaintiff survived summary judgment:

> "The district court denied their [Rule 50] motions on the erroneous grounds that it was bound by the Sixth Circuit's earlier decision in this case reversing the grant of summary judgment to defendants. [Internal citation omitted]. Although the standard for granting judgment as a matter of law mirrors that for granting summary judgment, they are applied at different times during the litigation. On a Rule 50 motion, the district court must determine whether the evidence presented at trial, which may or may not closely resemble the evidence presented at the summary judgment stage, creates a genuine issue of material fact. A district court is simply not bound by a denial of summary judgment, whether it be its own or ours, on the ultimate issue of whether a Rule 50 motion should be granted.

"The reason [for this] is straightforward: 'Summary judgment rulings are anticipatory, and plaintiffs and trial courts occasionally err on the side of expecting that more (rather than less) evidence will be presented in support of a claim.'" *Wells*, 106 F. App'x at 322–23, quoting *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988). "By contrast, '[t]here is nothing anticipatory about a Rule 50 motion: either the plaintiff has produced evidence supporting the claim or he has not." *Wells*, 106 Fed. App'x at 323. As these cases make clear, this Court's reversal of summary judgment did not preclude the District Court from granting Walbro's Rule 50 Motion. This is especially true considering that the evidence presented at trial was remarkably different from the evidence presented at the summary judgment stage.

### B.    Rule 59

Under Rule 59(a), "[t]he [C]ourt may, on motion, grant a new trial ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "We have explained that the 'governing principle' in the district court's consideration of a motion for a new trial 'is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial.'"  *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 544 (6th Cir.2012), quoting *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir.1990).  "The Supreme Court has noted that 'the authority of trial judges to grant new trials' pursuant to Rule 59(a) 'is large.'"  *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir.2005), quoting *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996).  Indeed, "[t]he trial judge in the federal system has discretion to grant a new trial if the verdict appears to the judge to be against the weight of the evidence."  *Gasperini*, 518 U.S. at 433.

This Court reviews the district court's grant of a new trial under an abuse of discretion standard.  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir.2013). "This means that [this Court] will reverse the district court's decision only if we have a definite and firm conviction that the trial court committed a clear error of judgment." *Id.*, quoting *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989,

995 (6th Cir.2012) and *Mich. First Credit Union v. Cumis Ins. Soc'y, Inc*., 641 F.3d 240, 245–46 (6th Cir.2011)(internal quotations omitted).

## ARGUMENT

I.    **PLAINTIFF DID NOT PRESENT EVIDENCE THAT WOULD PERMIT A REASONABLE JURY TO FIND THAT THE AREA MANAGER POSITION WAS ELIMINATED BECAUSE OF HIS AGE**

### A.    Plaintiff Had the Burden of Proving His Age Was a Determining Factor in the Decision to Eliminate the Area Manager Position

Plaintiff has the "ultimate burden of persuasion regarding his age discrimination claim." [3] *Hutchinson v. Fiserv-Cir, Inc.*, 121 F.3d 708, 3 (6th Cir.1997), citing *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 942 (6th Cir.1987). To meet his burden, Plaintiff must "show by a preponderance of the evidence that 'age was a determining factor in the adverse action that the employer took against him.'" *Id.*, quoting *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir.1991). "Under Michigan law, 'age is a determining factor when the unlawful adverse action would not have occurred without age discrimination.'" *Id.*, quoting *Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 589 (Mich.1986). The ELCRA "'does not provide a remedy for unfair treatment unless it was because of age discrimination." *Matras*, 385 N.W.2d at 590. *See also Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997).

---

[3] ELCRA claims are analyzed under the same standards as federal ADEA claims. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir.2009).

As the District Court recognized, a plaintiff most commonly attempts to prove that age was a determining factor in the discharge decision by showing he was replaced by a younger employee or through evidence he was treated differently than similarly situated persons of a different class for the same or similar conduct. *[ECF No._143, PageID.4116, citing Williams v. Dep't of Health & Hum. Servs., 2021 WL 5027962, at \*3 (Mich. Ct. App. Oct. 28, 2021), quoting Lytle v. Malady, 579 N.W.2d 906 (Mich.1998)].*

**B.    Plaintiff Did Not Prove His Age Was a Determining Factor in the Decision to Eliminate the Area Manager Position**

**1.    The Unrebutted Evidence Establishes the Area Manager Position was Eliminated for Reasons Unrelated to Plaintiff's Age**

Davidson and Rard both testified that the Area Manager position was eliminated because it was no longer needed. *[ECF No._116, PageID.2555-2559; 2576; ECF No._117, PageID.2716-2717, 2783-2784].* Rard came to this conclusion after conducting an independent review of Walbro's organizational charts, without any input or prompting from Davidson, and noticing Plaintiff did not have any direct reports. *[ECF No._116, PageID.2511, 2554-2557; ECF No._117, PageID_2785].* She testified, "[i]t doesn't make sense to me" to have an Area Manager position. *[ECF No._116, PageID.2511].* Rard also testified she did not know Plaintiff was the Area Manager when she approached Davidson to question the business sense of having the Area Manager position. *[Id., Page ID.2556].*

Davidson's and Rard's testimony on this topic went *unrebutted* at trial. Plaintiff offered no evidence that the Area Manager position was still needed in June 2018. Other than Davidson and Rard, Plaintiff did not call a single witness who was employed *at the time* the decision was made to eliminate the position. The only Walbro employees Plaintiff called as witnesses at trial - - Rob Hartwick, John Graves, and Greg Creighton - - were last employed by Walbro two to five years *before* the decision was made to eliminate the Area Manager position. *[ECF No._116, PageID.2607, 2630, 2648; ECF No._117, PageID.2679].* Unsurprisingly, these witnesses testified they: (i) did not know what Plaintiff's job duties were after they left Walbro; (ii) did not know whether the nature of Walbro's operations changed after they left; and (iii) did not know whether the Area Manager position was still needed in June 2018. *[ECF No._116, PageID.2608-2611, 2620, 2648-2656; ECF No._117, PageID.2683-2685].* This testimony did nothing to undermine Davidson's and Rard's testimony. There is *no evidence* showing the Area Manager position was eliminated for any reason other than it was no longer needed.

Nor is there any evidence that Plaintiff's age was a factor in the decision to eliminate the position. Davidson and Rard testified that Plaintiff's age *had nothing to do with* the decision to eliminate the position. *[ECF No._116, PageID.2574; ECF No._117, Page ID.2792].* Rard also testified that Plaintiff's age was never mentioned when discussing the elimination of the Area Manager position. *[ECF No._116, PageID.2571-2572].* Not only was this testimony unrebutted, Plaintiff testified he

believes Rard is truthful and does not believe she discriminated against him. *[ECF No._118, PageID.2932-2934]*. When this testimony is coupled with the lack of evidence showing that Coyle and Arkells, both of whom were involved in the decision to eliminate the position, had discriminatory animus towards older employees, reasonable jurors could only have reached one conclusion - - Plaintiff's age was *not* a factor in the decision to eliminate the Area Manager position.

This Court should affirm the District Court's decision vacating the jury's verdict. *See Hutchinson*, *supra* (holding the trial court erred by denying defendants' motion for judgment as a matter of law where a reasonable person could not have concluded that age was a determining factor in defendant's decision to eliminate plaintiff's position).

### 2.      The Alleged Ageist Comments Were Insufficient To Establish the Area Manager Position Eliminated Because of Plaintiff's Age

Plaintiff's reliance on alleged ageist comments is unpersuasive. Plaintiff admitted the only thing Davidson said during the separation meeting was that the Company was going in a different direction and his job was being eliminated. *[ECF No._117, PageID.2831, 2844; ECF No. 118, PageID.2929, 2931]*. Plaintiff also admitted that Davidson did not make any comments about his age or retirement during the separation meeting:

> Q. So when Mr. Davidson said - - testified, I should say, he testified under oath that he didn't say anything about your age or retirement during the separation meeting, that's truthful testimony?

A.  That's truthful, yes.

Q.  Okay.  So you admit today, in front of this jury, that Mr. Davidson never said anything about age or retirement during the separation meeting, right?

A.  Not during the separation meeting.

[ECF No._118, PageID.2931].  This is consistent with Davidson's testimony that he never made any comments about Plaintiff's age.  [ECF No._117, PageID.2729]. The evidence at trial shows Davidson did not say anything about Plaintiff's age or retirement during the separation meeting.

Plaintiff's argument that the jury was permitted to consider Davidson's alleged comment because it was mentioned in the report prepared by Walbro's forensic psychiatrist, Dr. Elissa Benedek, and during her cross examination, is baseless. Plaintiff's admission at trial is clear - - Davidson did not mention age or retirement during the separation meeting. That Plaintiff told Dr. Benedek otherwise simply means he lied about the comment, not once, but twice. The first time was during his deposition. The second time was when he met with Dr. Benedek. Regardless, the jury was not permitted to rely on the comment Plaintiff attributed to Davidson when he met with Dr. Benedek because Plaintiff admitted at trial this comment was never made. The District Court properly concluded Davidson did not make any statements about Plaintiff's age or retirement during the separation meeting.[4]

---

[4] Plaintiff's reliance on *Dodson v. Imperial Motors, Inc.*, 295 F.2d 609 (6th Cir.1961)for the proposition that credibility determinations are for the jury is

As for Plaintiff's testimony that Rard mentioned the word "age" during the separation meeting, he also testified that Rard said the Area Manager position was **_not_** eliminated because of his age, race, religion, or any other protected characteristic. *[ECF No._117, PageID.2838-2839; ECF No._118, Page ID.2866-2868, 2929-2932]. This is the opposite of an ageist comment.* Rard's use of the word "not" removed discriminatory animus from her alleged references to age. This explains why Plaintiff admitted that Rard never made any ageist comments. *[ECF No._118, PageID.2864].*

The lack of discriminatory intent is underscored by the fact that Plaintiff is not claiming the Area Manager position was eliminated because of his race, religion, etc., even though Rard allegedly mentioned those protected characteristics during the separation meeting. If Rard's alleged references to these protected characteristics were evidence of discriminatory animus, Plaintiff would have viable claims that the position was eliminated based on his race, religion, etc. This demonstrates the absurdness of the argument that Rard's alleged references to age and the other protected characteristics during the separation meeting are indicative of discriminatory intent. Even under Plaintiff's version of events, nothing was said

---

misplaced. Dr. Benedek and Plaintiff did not contradict each other at trial. Plaintiff contradicted the information he provided to Dr. Benedek prior to the trial. The District Court did not make any credibility determinations when vacating the jury's verdict.

during the separation meeting that could be deemed discriminatory. The jury could not have relied on anything said during the separation meeting to support its verdict.

That leaves Davidson's alleged comment during the meeting when Plaintiff received his service award and Davidson's alleged "let the old guy do it" comment, which Plaintiff admitted were the only alleged ageist comments Davidson ever made:

> Q.  And then the only other comment [besides the one at the 40 years of service award presentation] that you claim [Davidson] made is, "let the old guy do it."
>
> A.  Correct.

*[Id., PageID.2936].*

Plaintiff admitted he thought the alleged comment during the award presentation was a "joke" and Davidson's attempt to "be funny." *[ECF No. 117, PageID.2828-2829; ECF No. 118, PageID.2936].* Plaintiff, himself, did not ascribe any discriminatory animus to this alleged comment. Regardless, as the District Court properly recognized, this comment was allegedly made in October 2016, a year and a half before Plaintiff's separation and had nothing to do with the separation. *[ECF No._117, PageID.2828-2829; ECF No._143, PageID.4118].* It was also allegedly made around the same time Walbro completed a reduction in force, *of which Plaintiff was not a part*. The District Court correctly held this alleged comment cannot support a finding of age discrimination. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.1998) ("[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy

the plaintiff's burden … of demonstrating animus."); *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 83 (6th Cir.2020) (affirming the grant of summary judgment and concluding that a statement by alleged decisionmaker was not evidence of discrimination where it did not relate to the termination decision).

As for the alleged "let the old guy do it" comment, there is no evidence linking this alleged comment to the decision to eliminate the Area Manager position. Plaintiff did not provide a single detail about this alleged comment other than it was made during the morning meeting when discussing "what the problems were and who was assigned to get it fixed."[5]  *[ECF No._118, Page ID.2865]*.  It is insufficient to establish that the Area Manager position was eliminated because of Plaintiff's age. The same is true regarding the alleged "old man" and "you're losing a step" comments, both of which were testified to on re-direct over defense counsel's objections and are contrary to Plaintiff's aforementioned admission that Davidson only made two alleged ageist comments. *[Id., PageID.2977]*. Setting aside the credibility concerns surrounding Plaintiff's testimony regarding these alleged comments, Plaintiff did not provide any context for these alleged comments and he did not connect them to the decision to eliminate the Area Manager position. The jury could not reasonably rely on these alleged comments to find that Plaintiff met his burden of proof.

---

[5] Plaintiff could not identify a single witness to this or any other alleged ageist comment. *[Id., PageID.2938]*.

This conclusion is supported by this Court's decision in *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275 (6th Cir.2012). There, the plaintiff's supervisor allegedly said to the plaintiff, "[m]ost of the people here are the old people like you." *Id.* at 287.  In regard to two other employees, the supervisor also said that one of them had "been in his job too long" and the other was "lazy and didn't work and wasn't doing his job and had been there too long." *Id.* This Court held that none of these comments constituted evidence - - direct or circumstantial - - of age discrimination because they were unrelated to the decision to terminate the plaintiff's employment and the latter two comments were ambiguous in that they could have referred to the subject employees' tenure. *Id.* In reaching this conclusion, this Court relied on the pronouncement in *Geiger*, 579 F.3d at 621 that "'[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ... of demonstrating animus." *Id.*

As shown above, none of the alleged comments attributable to Davidson relate to the decision to eliminate the Area Manager position. As *Blizzard* and the other cases from this Court instruct, the alleged comments cannot support a finding of age discrimination. This is especially true considering that Plaintiff did not attribute any discriminatory animus or ageist comments to Rard, Arkells, or Coyle, all of whom were involved in the decision to eliminate the Area Manager position. *[ECF No._116, PageID.2574-2575; ECF No._118, PageID.2932].* Nor did Plaintiff mention anything about age discrimination when he was escorted out of the building. *[ECF*

*No._118, PageID.2934].* To the contrary, Plaintiff told his escort, "I must have did something wrong." *[Id., PageID.2933].* The alleged ageist comments do not support the jury's verdict. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir.2004) (finding supervisor's references to plaintiffs as "old farts" on a "fairly regular basis" were not evidence of age discrimination "[s]ince the plaintiffs do not allege that they were made in relation to the decision to discharge the plaintiffs."); *Hermann v. MidMichigan Health*, 2012 WL 205839 (Mich. Ct. App. Jan. 24, 2012) (statements about an "aging workforce" as part of a coming "transformational change" in a PowerPoint slide prepared by the defendant's President were not evidence of discriminatory animus against older workers.")

Further, as the District Court stated, "Michigan caselaw that consider whether comments made by a supervisor constitute circumstances giving rise to an inference of discrimination do so *in conjunction with* other evidence of how a similarly situated person was treated *or* evidence that someone outside the protected class replaced the terminated employee." *[ECF No._143, PageID.4119 (emphasis in original)].* Plaintiff was not replaced and did not "identify *any* similarly situated person outside his protected class who was treated differently." *[ECF No._116, PageID.2582; ECF No._143, PageID.4118 (emphasis in original)].* The District Court properly

concluded the alleged offhand comments do not give rise to an inference of age discrimination.[6] *[Id., PageID.4119-4120].*

### 3. The Evidence at Trial Established that Walbro Did Not Have Any Discriminatory Animus

Plaintiff failed to offer any evidence at trial showing that Davidson or anyone else at Walbro was predisposed to discriminate against older employees. In fact, all of the evidence at trial shows the exact opposite, as it is undisputed that: (i) Plaintiff was not included in the October 2016 reduction in force when he was 58 years old; (ii) Plaintiff was not included in the November 2017 talent upgrade when he was 59 years old, even though he was in bottom 10% of employees and could have been included in the upgrade; (iii) Davidson hired a number of employees in their mid-to-upper 50s; and (iv) Davidson did not eliminate any other positions or terminate a single other employee, even though the salaried workforce at the Cass City plant was full of older, long-term employees, just like Plaintiff. *[ECF No._116, PageID. 2549-52; ECF No._117, PageID. 2703, 2713, 2754-55, 2762-65, 2777, 2788, 2792; ECF No._118, PageID.2941].* Further, Davidson testified that he was never told by anyone at Walbro to get rid of the older employees, and Rard testified that Davidson never mentioned anything to her about the ages of the employees. *[ECF No._116,*

---

[6] Contrary to Plaintiff's assertion on page 19 of his Brief, the District Court did not find Plaintiff presented "direct evidence" when ruling on Walbro's motion for directed verdict. *[ECF No._119, PageID.3131].*

*PageID.2553; ECF No._117, PageID.2763].* This evidence overwhelmingly demonstrates that there was no discriminatory animus against older employees.

Plaintiff's argument that the jury could rely on the stack ranking document associated with the November 2017 talent upgrade to find animus is unpersuasive. Plaintiff falsely states on page 38 of his Appeal Brief that "Davidson testified that he terminated Lowe based entirely on a ranking spreadsheet purportedly showing him in the bottom 10%." Davidson provided unrebutted testimony that while he could have terminated Plaintiff as part of the talent upgrade, he did not do so. *[ECF No._117, PageID.2703, 2754-2756, 2781-2782].* Davidson also testified that Plaintiff was separated from Walbro due to a position elimination; not because of anything in the stack ranking document. *[Id., PageID.2688-2691].*

Further, Davidson easily could have included Plaintiff in the talent upgrade if he truly wanted to get rid of him because of his age. The fact that Davidson did not do so directly refutes Plaintiff's assertion that his age was a motivating factor in the decision to eliminate the Area Manager position. The stack ranking and talent upgrade are of no help to Plaintiff. And while Plaintiff points to the adverse inference instruction that was provided to the jury in connection with the stack-ranking document, there is no adverse inference that can be drawn *given the fact that Plaintiff survived the talent upgrade*.[7] This is especially true given Davidson's unrebutted

---

[7] For the reasons stated in Defendant's Response to Plaintiff's Motions for Adverse Presumption or Adverse Inference and Sanctions *[ECF No._107]*, Walbro believes the District Court erred by providing an adverse inference instruction to the jury.

testimony that the stack-ranking document did not state anything about Plaintiff's age. *[ECF No._117, PageID.2703, 2754-2756, 2781-2782].*

### 4.    **Plaintiff's Entire Case Was Premised on Impermissibly Questioning Walbro's Business Judgment**

Plaintiff cannot prove his age discrimination claim by questioning the "soundness of an employer's business judgment." *Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. Ct. App.1990). *See also, Brocklehurst*, 123 F.3d at 898 (recognizing that a plaintiff may not substitute his own business judgment for that of defendant to establish pretext for age discrimination). The reason being, "[a]n age discrimination action is not 'a device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities.'" *Henry v. Outback Steakhouse of Fla., LLC*, 2017 WL 1382292, at *1 (E.D. Mich. Apr. 18, 2017), quoting *Brocklehurst*, 123 F.3d at 898. This legal proposition is consistent with Michigan Model Jury Instruction 105.03, which the District Court gave to the jury, stating "[y]our task is to determine whether Walbro discriminated against Mr. Lowe. You are not to substitute your judgment for Walbro's business judgment, or decide this case based upon what you would have done."

---

Regardless, an adverse inference instruction is not sufficient to support the jury's verdict and nothing in *Jones v. Ameritech Services, Inc.*, 1999 WL 33453378 (Mich. Ct. App.1999) states otherwise. In fact, the majority opinion in *Jones* does not even address this issue.

Despite these clear legal principles, Plaintiff spent the entire trial attacking Walbro's business judgment. He attacked the decision to eliminate the Area Manager position, without offering any evidence that the position was eliminated because of his age. He attacked Walbro's decision not to offer him an alternative position, even though none were available for a person with his skillset and Walbro had no obligation to offer Plaintiff another position. *[ECF No._116, Page ID.2537; ECF No._117, Page ID.2692, 2734, 2781, 2792; ECF No._118, PageID.2871].* He attacked Walbro for not providing him with written notice that he was not meeting Davidson's expectations, even though Davidson testified that he spoke to Plaintiff multiple times and "repeatedly" communicated his expectations. *[ECF No._117, PageID.2768-2769].* He attacked Walbro for not providing him with written performance reviews, even though Davidson did not prepare performance reviews for any employees and there is no legal duty to provide employees with written reviews. *[Id., PageID.2696-2699, 2770].* He attacked Walbro for not providing him with advance notice that his position was being eliminated, even though Plaintiff admitted that such notice would not be appropriate. *[ECF No._118, PageID.2940-2941].* And Plaintiff did all of this without offering a shred of evidence that Walbro engaged in or refrained from engaging in any of these behaviors *because of* his age.

The questions regarding all of these topics were smoke screens designed to attack Walbro's business judgment and make it appear as though Walbro was not a "good" or "fair" employer. However, that was not for the jury to decide. The jury

was only tasked with deciding whether the Area Manager position was eliminated because of Plaintiff's age. As the aforementioned cases instruct, the jury was prohibited from substituting its judgment for Walbro's business judgment or deciding the case based on what they would have done.

The jury was also prohibited from letting sympathy influence their decision and/or from providing Plaintiff with a remedy for any unfair treatment as the ELCRA "'does not provide a remedy for unfair treatment unless it was because of age discrimination." *Matras*, 385 N.W.2d at 590; Model Jury Instruction 1.02(4). Yet, these are the only factors the jury could have relied upon when finding in Plaintiff's favor because, as shown above, Plaintiff failed to offer any evidence that the Area Manager position was eliminated because of his age. The District Court properly vacated the jury's verdict. *See Hutchinson*, *supra*.

### C.    This Court's Prior Opinion Does Not Support the Jury's Verdict

Plaintiff relies heavily on this Court's prior Opinion in this matter. However, this Court's Opinion does not support the jury's verdict for a number of reasons. First, this Court's entire Opinion was based on the assumption that Davidson mentioned Plaintiff's age and retirement during the separation meeting.  As shown above, Plaintiff admitted during the trial that Davidson did not say anything about his age or retirement during the meeting.  This Court's Opinion has no application to this case because it was based on evidence that was not presented at trial.

Second, contrary to Plaintiff's assertion on page 19 of his Brief, this Court did not "unanimously rule[] that Davidson's *statements* constituted direct evidence of age discrimination." (emphasis added). The *only* alleged statement this Court looked at as part of its direct-evidence analysis was the one Plaintiff testified to during his deposition and later admitted at trial was not made (*i.e.*, "Well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.") *[ECF No._35]*. This Court held that this alleged statement "*by itself* could lead a reasonable jury to find that the company acted on a predisposition to discriminate on the basis of age in taking its adverse employment action against Lowe." *[Id. (emphasis added)]*. For this reason, this Court did not discuss or analyze any other alleged ageist statements as part of its direct-evidence analysis.[8] There is

---

[8] It appears the District Court was mistaken about this when it denied Walbro's motion for directed verdict because when doing so, the District Court stated, "the Court of Appeals agrees that there was a jury issue." *[ECF No._119, PageID.3131]*. However, the only alleged comments the District Court mentioned when making its ruling are ones this Court did *not* analyze as part of its prior decision (*i.e.*, the alleged comment at the award ceremony, the alleged let the old guy handle it comment, and Rard allegedly using the word "age" during the termination meeting). The District Court corrected this mistake when it wrote in its Opinion granting Walbro's motion for judgment as a matter of law that "the evidence evaluated at summary judgment was *not* the same evidence the jury heard during the trial." *[ECF No._143, PageID.4114 (emphasis in original)]*. This explains, in part, why the District Court denied Walbro's motion for directed verdict, but then granted Walbro's motion for judgment as a matter of law - - the District Court mistakenly believed this Court ruled on the evidence presented at trial, when it had not. Further, the District Court's ruling on Walbro's motion for judgment as a matter of law came after all of the evidence had been presented at trial, whereas its ruling on Walbro's motion for directed verdict was based solely on the evidence presented during Plaintiff's case-in-chief. Clearly, the District Court was permitted to evaluate whether there was sufficient evidence to support the jury's verdict when viewed in light of all of the evidence presented at

no merit to Plaintiff's argument that this Court made any ruling regarding the alleged ageist statements presented at trial.

And for good reason, as these other alleged statements are nothing like the comment in *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836 (Mich.2001), which this Court relied upon when reversing summary judgment. In *DeBrow*, the plaintiff's supervisor told the plaintiff *during the termination meeting* that he was "getting too old for this shit." None of the alleged comments that Plaintiff testified to at trial were made during the separation meeting. Nor do they have any relationship to the termination decision. This Court's discussion and analysis of *DeBrow* have no application to the testimony at trial.[9]

Third, the analysis in this Court's Opinion was limited to direct evidence and mixed-motive theories neither of which apply to the evidence presented at trial. This

---

trial; not the evidence at the time Walbro moved for directed verdict and certainly not the evidence that was presented at the summary judgment stage. Otherwise, a trial court could never grant a Rule 50 motion after denying a motion for directed verdict. Plaintiff's argument is at odds with Rule 50(b), which expressly allows for a renewed motion for judgment as a matter of law.

[9] The same is true regarding *Downey v. Charlevoix Cnty. Bd. of Road Comm'rs*, 576 N.W.2d 712 (Mich. Ct. App.1998), which Plaintiff cites on page 26 of his Brief. In *Downey*, the manager of the road commission made a comment about "getting rid of older employees" because they "weren't doing the job" and also said, "If I have to, I will get rid of the older guys—you older guys and replace you with younger ones." *Id.* at 718. In addition to these comments, another supervisor said, "Don't quit now. We will get rid of these old guys, and we will have a good crew." *Id.* None of Davidson's alleged comments evidence an intent to get rid of Plaintiff or anyone else because of their age. Nor is there any evidence that Davidson targeted "older" employees for removal. In fact, as shown above, the exact opposite is true. *Downey* is inapposite.

Court's direct evidence analysis was confined to Davidson's alleged statement during the separation meeting, which Plaintiff admitted at trial was never made. It was solely because of this alleged statement that this Court analyzed whether Walbro proved under a mixed-motive theory that it would have discharged Plaintiff even if his age did not allegedly play a role in the decision. *[ECF No._35]*. Not only was the mixed-motive theory rendered inapplicable once the alleged direct evidence was removed from the case, this theory does not apply at trial, as Walbro was not required to prove anything during the trial. As evidenced by Jury Instructions 105.02 and 105.04, the burden of proof rested solely with Plaintiff.  The legal analysis this Court employed in its Opinion has no application to this appeal.

### D.    The Cases Plaintiff Relies on in Support of His Appeal are Inapposite

Because Plaintiff was unable to prove that he was replaced or treated differently than a similarly, situated younger employee, he cites to a number of other cases to bolster his argument that the jury's verdict was correct.  These cases have no application to the evidence presented at trial.

Plaintiff cites *Allen v. DaimlerChrysler Corp.*, 2006 WL 626239 (Mich. Ct. App. Mar. 14, 2006) on page 41 of his Brief for the proposition that "Michigan courts recognize that even vague or infrequent discriminatory comments, when paired with additional circumstantial evidence, can establish a prima facie case." However, the *Allen* court affirmed summary disposition for the employer on the plaintiff's age discrimination claim even though: (i) a higher management employee made a

comment at a town hall meeting "about the number of older people in the organization and how they needed some fresh, young faces in the organization;" (ii) the plaintiff's supervisor made a comment during a staff meeting that "there are too many old faces in here. We need to get some young blood in here;" and (iii) the plaintiff's supervisor stated during another staff meeting that "[w]e have too many grey-haired men in here. We need more younger men and women." The *Allen* court concluded that the plaintiff failed to present evidence that these comments were related to any decision not to promote the plaintiff and it was "speculative to posit that the allegedly age-biased sentiment expressed by [the plaintiff's supervisor] was a motivating factor in any of her decisions not to promote plaintiff." *Id*. at 5.

The *Allen* decision actually supports Walbro. Like in *Allen*, there is no evidence linking any of Davidson's alleged comments to the decision to eliminate the Area Manager position. And unlike in *Allen*, none of Davidson's alleged comments evidence any discriminatory animus against older employees. They were merely offhanded comments. They are not "discriminatory statements" like the ones in *Allen*, which ultimately proved incapable of establishing age discrimination.

This same analysis applies to *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998). That case involved "numerous age-biased statements allegedly made by several individuals occupying high positions in Goodyear's Retail Sales Division," including a comment by the vice president for the plaintiff's division that "[t]his company is being run by white haired old men waiting to retire, and this

has to change" and a directive by this same individual to personnel managers "that he did not want any employee over 50 years old on his staff." *Id.* at 354. There were also comments by other members of senior management that "there were some people losing their jobs and they will—but they will be replaced by younger college grads at less money" and "there will be no more promotions of anyone—to different departments—for anyone over age 51." *Id.* at 356. While this Court understandably concluded that these comments were sufficient to create a genuine issue of material fact as to whether the plaintiff was denied a transfer because of his age, this Court also stated:

> We do not mean to imply that any ageist comment by a corporate executive is relevant as evidence of a discriminatory corporate culture. Rather, the courts must carefully evaluate factors affecting the statement's probative value, such as "the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action," [internal citation omitted], as well as whether the statement buttresses other evidence of pretext. *Id.* at 357.

When Davidson's alleged comments are analyzed under this standard, it is clear they are completely benign and have no connection to the decision to eliminate the Area Manager. The District Court properly found that these alleged comments were insufficient to establish age discrimination.

*Williams v. Department of Health and Human Services*, 2021 WL 5027962 (Mich. Ct. App. Oct. 28, 2021), which Plaintiff relies on heavily in his Brief, falls prey to the same pitfalls. *Williams* involved "evidence of a discriminatory

atmosphere," which included, "repeated use of racially discriminatory comments, imagery, and nicknames against African-American workers in the St. Clair County DHHS office, and evidence that management generally downplayed these issues, along with evidence of negative employment consequences, such as being bypassed for overtime, and workers of color not being given questions ahead of time for a position." *Id.* at 7. No evidence was presented at trial of a discriminatory atmosphere against older employees. The *Williams* decision provides no support for the jury's verdict.

The same is true regarding *Sobotka v. Olympia Ent., Inc.*, 2025 WL 511120 (Mich. Ct. App. Feb. 14, 2025). There, a "few days" before the plaintiff's termination, a senior management employee who recommended that the plaintiff be terminated, told the plaintiff something to the effect of "you're just old," "you're getting old," or "you're old." *Id.* at 2. The plaintiff testified that he did not believe this comment was a joke. *Id.* Based on the temporal proximity of the statement to the termination decision and potential false testimony from a defense witness as to whether the individual who made the statement participated in the termination decision, the court concluded there was a question of fact as to whether the plaintiff's age motivated the termination decision. *Id.* at 6-7. *Sobotka* is easily distinguishable. Unlike the plaintiff in *Sobotka*, Plaintiff testified that he thought the alleged comment during the award presentation was a "joke" and Davidson's attempt to "be funny." *[ECF No._117, PageID.2828-2829; ECF No._118, PageID.2936].* Further, as the District Court

correctly noted, the alleged "old guy" comments were allegedly made at unspecified times. *[ECF No._143, PageID.4118]*.  In other words, there was no evidence at trial that these alleged comments were made in close proximity to the decision to eliminate the Area Manager position or that they had anything to do with the decision.  The *Sobotka* decision is inapposite.

There is also no basis for Plaintiff's reliance on *Williams*, *supra*, and *Smith v. Department of Health and Human Services*, 2022 WL 880455 (Mich. Ct. App. March 24, 2022) for the proposition that discrimination can be establish through "silence." As an initial matter, *Williams* does not address this topic, so it provides no support for Plaintiff's argument.  And the *only* reference in *Smith* regarding this issue is that the silence by the plaintiff's supervisor when confronted with the plaintiff's claims of discrimination was "arguabl[y]" evidence that the termination occurred under circumstances giving rise to an inference of discrimination.  2022 WL 880455 at 6, n. 1.  Even if this reference, which was relegated to a footnote, provided ample support for Plaintiff's argument, it is negated by the fact that the *Smith* court affirmed summary disposition in favor of the employer on the plaintiff's discrimination claim. This demonstrates that silence, alone, will not support a finding of discrimination. This is particularly true given Plaintiff's testimony that Rard allegedly told him that he was not being terminated because of his age (or any other protected characteristic) during the separation meeting. *[ECF No._117, PageID.2838-2839; ECF No._118,*

*Page ID.2866-2868, 2929-2932].* Plaintiff's own testimony directly contradicts his "silence" argument.

The "shifting reason" cases cited on pages 45 and 46 of Plaintiff's Brief are also unavailing. These cases have no application to this matter because Walbro did not offer "shifting reasons" or differing justifications for Plaintiff's separation. Davidson and Rard both testified that the Area Manager position was eliminated because it was no longer needed. *[ECF No._116, PageID.2555-2559, 2575-2576; ECF No._117, PageID.2716-2717, 2783-2784].* At no time did Davidson or Rard offer any other reason for Plaintiff's separation.

To this end, Rard's testimony about "pivoting" had nothing to do with the reason for Plaintiff's separation. Quite the opposite, Rard testified that she would "pivot" to investigating the conduct reported in her Observed Behaviors document if Plaintiff's position was *not* eliminated. *[ECF No._116, PageID.2509, 2522, 2560-2561].* She did not testify that Walbro would "pivot" to finding another reason to terminate Plaintiff's employment. Nor did she testify that Plaintiff's position was eliminated because of the conduct in the Observed Behaviors document. There is nothing about Rard's testimony that supports the jury's verdict.

The same is true regarding Davidson's testimony. Davidson testified repeatedly that Plaintiff's position was eliminated. *[ECF No._117, PageID.2688-2691].* Davidson never offered another explanation for Plaintiff's separation. He simply explained that Plaintiff's behavior and performance impacted *the timing* of

the decision. There is nothing inconsistent about Davidson's testimony regarding the reason for Plaintiff's separation.

Plaintiff has not offered any factual or legal support for the jury's verdict. The District's Court decision vacating the jury's verdict should be affirmed.

## II. ALTERNATIVELY, THE DISTRICT COURT CORRECTLY ORDERED A NEW TRIAL

The District Court conditionally ruled that even if this Court reverses its decision granting Walbro's Motion for Judgment as a Matter of Law, Walbro is entitled to a new trial under Rule 59. The District Court made this conditional ruling because, "[u]nder Civil Rule 50(c)(1), when a district court grants a motion for judgment as a matter of law, 'it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed.'" *[ECF No._143, PageID.4120*, quoting *Crankpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 737 (6th Cir.2016)]. In conducting this analysis in a diversity case, "Michigan law applies in evaluating the propriety of the jury's verdict." *[ECF No._143, PageID.4141*, citing *Miller v. Alldata Corp.*, 14 F. App'x 457, 466 (6th Cir.2001)].

The District Court concluded that: (1) "the jury's verdict was against the great weight of the evidence," and (2) "the jury's damages award was excessive." *[ECF No._143, PageID.4121].* As this Court has previously held, "[a] district court, generally speaking, has considerable discretion in deciding whether to grant either type of motion, ...." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Service*, 616 F.3d

612, 615 (6th Cir.2010). The District Court's conditional grant of a new trial under Rule 59 should be affirmed.[10]

### A. The District Court Did Not Abuse Its Discretion in Determining That the Jury's Verdict Was Against the Great Weight of the Evidence

The District Court concluded that for the reasons entitling Walbro to judgment as a matter of law, the jury's verdict was against the great weight of the evidence. *[ECF No._143, PageID.4121]*. On Appeal, Plaintiff does not raise any new arguments or separately analyze whether this ruling was correct. In other words, Plaintiff does not analyze whether the District Court erred in making this determination under the heightened abuse of discretion standard of review. This, alone, should result in the denial of Plaintiff's appeal. *See McPherson v. Kelsey,* 125 F.3d 989, 995-996 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones.")

And, even if Plaintiff's failure to do so was not fatal to his claim, the District Court's decision should still be affirmed for the reasons discussed above. *Leisure Caviar, LLC, supra.*

---

[10] Plaintiff's reliance on *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) for the principle that "a new trial is warranted only in 'extraordinary circumstances where the evidence preponderates heavily against the verdict," should be given no effect. *Hughes* involved a criminal trial and an appeal brought under related criminal rules of civil procedure and appeals that do not apply here.

**B.     The District Court Did Not Abuse Its Discretion in Determining That the Jury's Verdict Was Excessive**

In *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 399 (Mich.2004), the Michigan Supreme Court noted that a verdict is excessive when it is "going beyond the usual, necessary, or proper limit or degree; characterized by excess." To this end, "judicial review of purportedly excessive jury verdicts" should focus on three objective factors:

> [1] whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; [2] whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; [and 3] whether the amount actually awarded is comparable to awards in similar cases within the state and in other jurisdictions.

*Id.* at 399-400, citing *Palenkas v. Beaumont*, 443 N.W.2d 354 (Mich.1989).

**1.     The Jury's Verdict Was the Result of Improper Methods, Prejudice, Passion, Partiality, Sympathy, Corruption, or Mistake of law or fact**

Damages for mental and emotional distress will not be presumed; they must be proved by competent evidence. *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 485 (6th Cir.2005). As the *Gilbert* court noted, courts are authorized to interfere with a jury verdict for damages when there is evidence to conclude that "excessiveness may be attributed to the effect of plaintiff's efforts to cause the jury to act on passion and prejudice." *Gilbert*, 685 N.W.2d at 403.

Here, there was no competent evidence supporting a $1,300,000 noneconomic damages award. The overwhelming evidence established that Plaintiff does not have

any mental health concerns, as he admittedly would have sought treatment if he needed it, but did not do so. *[ECF No._118, PageID.2981].* It is clear the jury acted with passion and prejudice. *Gilbert*, 685 N.W.2d at 400.

The lack of evidence also demonstrates that the jury's verdict was punitive. However, punitive damages are not available for claims under the ELCRA. *Hubbell v. FedEx Smartpost, Inc.,* 2018 WL 1288988, at *3 (E.D. Mich. Mar. 13, 2018), *aff'd*, 933 F.3d 558 (6th Cir.2019). This further demonstrates that the jury's verdict was influenced by improper factors. *Gilbert*, 685 N.W.2d at 395 (when analyzing whether a jury verdict is excessive, courts "must be mindful of the fact that punitive damages are available in Michigan *only* when expressly authorized by the Legislature.")  The District Court properly vacated the jury's verdict.

### 2.    The Jury's Verdict Was Outside the Limits of What Reasonable Minds Would Deem Just Compensation For the Alleged Injury Sustained

The facts surrounding the noneconomic damages award in this case are analogous to those in *Weber v. Infinity Broadcasting Corp.*, 2005 WL 3726303 (E.D. Mich. Dec. 14, 2005), where the district court reduced a jury's $2,000,000 noneconomic damages award in a post-trial motion for remittitur. There, the plaintiff testified that she suffered emotional trauma and mental anguish as a result of being terminated from the job she held for 25 years. Plaintiff also testified that her job was a major part of her identity and pride, and that losing her job placed stress on her family life. *Id.* at *6. However, like here, the plaintiff did not seek or require any treatment for emotional distress resulting from her termination. Nor did she take any

medication for any such distress. *Id.* The plaintiff also testified that she was "able and willing to work," and can "go[] to movies, out to dinner, shopping with friends, and taking a ski weekend with her husband." *Id.* The district court concluded that the verdict was outside what reasonable minds could deem just:

> There is a lack of supporting testimony or corroboration in this case, even from plaintiff's husband. Plaintiff testified that she has never consulted or treated with any psychiatrist, psychologist or mental health care professional, and that she never felt the need to do so. She admitted that none of her treating physicians ever recommended that she consult with a mental health care provider. Plaintiff has never been prescribed any medications for stress, nerves or depression. Plaintiff admitted that for lengthy periods of time, up to several years at a time, she never even treated with an ENT for the allergy condition that she insists is life threatening. In addition to not pursuing treatment of her perfume allergy, plaintiff did not pursue the diagnosis of reflux. Not even plaintiff's own testimony claims damages of the extent that would support a $2 million verdict.

*Id.*

The same result applies here. Plaintiff never treated with any mental healthcare providers following his separation from Walbro, and never felt the need to do so. *[ECF No._118, PageId.2890-91].* Nor has Plaintiff ever been prescribed any medication for mental health issues. *[Id.].* Like the plaintiff in *Weber,* Plaintiff (i) was able to work, as evidenced by him obtaining another job less than one month after his separation from Walbro; (ii) continues to see family and friends; and (iii) continues to go hunting, on vacations, and visits to his fiancé's cabin. *[Id., PageId.2892-95].*

45

Plaintiff produced no competent evidence of emotional distress to support the jury's verdict. This is especially true considering Plaintiff's admission that he has no intention of seeking treatment in the future. *[ECF No._118, PageId.2890]*. The jury must have improperly speculated that Plaintiff would experience emotional distress in the future.

The excessiveness of the jury's verdict is highlighted by *Paultich v. Detroit Edison Co*., 528 N.W.2d 200, 202 (Mich. App.1995), which Plaintiff cites in his Brief. There, the jury awarded the plaintiff nearly $1 million *less* in noneconomic damages than the jury did here (*i.e.*, a total of $359,000) based on similar alleged facts to this case; namely, that his "fiancée testified to the significant emotional toll of his termination." Setting aside that Plaintiff's testimony about his own mental and emotional health contradicts his fiancée's testimony, the fact that the jury's verdict was $1 million more than *Paultich* highlights the excessiveness of the verdict.

The same is true with respect to Plaintiff's reliance on *Fischer v. United Parcel Service*, 390 Fed.Appx. 465 (6th Cir.2010). There, the jury awarded the plaintiff $650,000 in compensatory damages in connection with a race discrimination and retaliation lawsuit, which was half the amount of the noneconomic damages award in this case. Applying this same analysis and standard of review, Plaintiff cannot show how the District Court abused its discretion in finding that a $1.3 million compensatory award was excessive.

There is no evidentiary basis for the jury's $1,000,000 noneconomic damages award through the date of trial, and an additional $300,000 in noneconomic damages in the future. The noneconomic damages award is against the great weight of the evidence, excessive, and punitive.

### 3. The Amount Awarded by the Jury Was not Comparable to Awards in Similar Cases

The jury's $1.3 million noneconomic damages award greatly exceeds the usual damages awarded in employment discrimination cases. *See Epstein v. Kalvin Miller Int'l, Inc.,* 139 F.Supp.2d 469, 480 (S.D.N.Y.2001) (finding that in a typical or garden variety emotional distress claim, jury awards have ranged from $5,000 to $30,000); *Hetzel v. Cnty. of Prince Williams,* 89 F.3d 169, 171 (4th Cir.1996) (court found $500,000 emotional distress award grossly excessive based upon the evidence presented and reduced to $15,000; plaintiff's evidence consisted of her brief and conclusory testimony that she had headaches, stress, trouble reading to her daughter, and problems with her family); *Wulf v. City of Wichita,* 883 F.2d 842, 874-75 (10th Cir.1989) (appellate court found excessive a $250,000 award for emotional distress - plaintiff and his wife testified that he was stressed, angry, depressed and frustrated - remanded for award not to exceed $50,000); *Steffes v. Pepsi-Cola Pers., Inc.,* 2001 WL 1631407, at *3 (6th Cir. Dec. 18, 2001) (affirming district court's remittitur of emotional distress damages from $400,000 to $100,000); *Gomez v. Great Lakes Steel Div., Nat. Steel Corp.,* 803 F.2d 250, 253 (6th Cir.1986) (noting district court's remittitur of compensatory damages award from $500,000 to $150,000 on

discrimination claim); *Longs v. Ford Motor Co.,* 2011 WL 13161601, at *5 (W.D. Tenn. Feb. 10, 2011) (trial court granted a new trial following a jury verdict of $1.1 million in compensatory damages because, while the plaintiff testified that he "went through a lot of emotional problems" due to his termination, he had not suffered familial issues or taken other action (such as relocating for another job) and, as such, the jury verdict bore little relation to the evidence presented at trial).

The chart and cases Plaintiff relies on to argue that jury's award was similar to other cases is undeveloped and contains no meaningful analysis as to how the facts of this case mirror the cases Plaintiff relies on. *See McPherson, supra.* This is likely because there are no similar jury awards in cases like this one where the plaintiff testified he has not experienced and does not expect to experience emotional health issues.

The jury's award of $1,300,000 in noneconomic damages to Plaintiff for embarrassment and humiliation damages is inconsistent with the typical range of jury awards in employment discrimination. The District Court's alternative decision to grant Walbro a new trial should be affirmed.

### C.     This Court Should Affirm the District Court's Ruling Because The Jury's Backpay and Front pay Awards Were Excessive

In its Rule 59(a) motion, Walbro argued that the jury's verdict should be vacated because there is no basis to award backpay after November 13, 2020 or front pay. *[See generally, ECF No._126].* While the District Court did not analyze this specific issue, it would likely have found that the jury's economic damages verdict

was against the great of the evidence or was excessive. This Court should affirm the District Court's grant of Walbro's Rule 59(a) motion on this alternative basis. *See Boler v. Earley*, 865 F.3d 391, 414 (6th Cir.2017)("We may affirm the district court on any basis supported in the record.").

### 1.    The Jury's Backpay Award is Against the Great Weight of the Evidence and is Excessive

The jury erred in awarding Plaintiff $443,418 in backpay damages, which the verdict form states is intended to fairly compensate Plaintiff for lost wages between June 28, 2018 and the date of the verdict, October 31, 2023. *[See ECF No._111, PageID.2447].*

A backpay award is intended "to restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place." *McMahon v. Libbey–Owens–Ford Co.*, 870 F.2d 1073, 1079 (6th Cir.1989). "The backpay period ends prior to judgement, however, if the plaintiff has therefore retired, 'for a discriminatee is not entitled to back pay to the extent that he fails to remain in the labor market ….'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 168 (2d. Cir.1998); *see also EEOC v. AZ Metro Distributors, LLC*, 2020 WL 7404432, at *6 (E.D.N.Y., Dec. 16, 2020)(finding that the backpay period ended at time of plaintiff "decided to fully retire.")  The reason being, "[a] plaintiff 'may not simply abandon his job search and continue to recover back pay.'"  *Kirsch*, 148 F.3d at 168, quoting *Hansard v. Pepsi–Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir.1989).

Plaintiff is not entitled to backpay damages after he retired on November 13, 2020. And even if he is, Plaintiff did not present sufficient evidence of job search efforts after November 13, 2020 to support the jury's backpay award. The backpay award was against the great weight of the evidence.

### 2.    The Jury's Front Pay Award Is Against the Great Weight of the Evidence and is Excessive

The purpose of front pay is to assist the discharged employee during the transition to new employment of equal or similar status. *Stafford v. Elect. Data Sys. Corp.*, 749 F. Supp. 781, 790 (E.D. Mich.1990)). To this end, "[i]t is clear that front pay awards, like backpay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts.... [T]he plaintiff's duty to mitigate must serve as a control on front pay damage awards. Thus, an award of front pay is intended to be temporary in nature." *Id.*, quoting *Cassino v. Reichhold Chemicals, Inc*., 817 F.2d 1347 (9th Cir.1987). The jury's verdict on front pay was against the great weight of evidence and excessive.

Plaintiff admitted he has no documents showing he applied for a job from November 13, 2020 through the date of trial, and his expert wrote in his report that Plaintiff retired on November 13, 2020.  No reasonable juror could conclude that Plaintiff engaged in meaningful job search efforts since November 13, 2020.

Plaintiff's reliance on the documents from the unemployment insurance agency does not change this conclusion.  These documents cover June 1, 2021 through January 31, 2022 and allegedly show that Plaintiff submitted in-person

applications to: his family farm; a dissolved television repair company; three lawncare businesses that Plaintiff admitted are not incorporated or registered with the State of Michigan; and his future son-in-law's various companies. Plaintiff's testimony related to these supposed in-person applications, including his inability to explain why he continued to apply to each of these companies even though they did not hire him multiple times, is so incredible that no reasonable juror could conclude that Plaintiff made an "honest, good faith effort" to minimize his damages by obtaining full-time employment. *See Brooks v. Woodline Motor Freight, Inc*., 852 F.2d 1061, 1065 (8th Cir.1988).

This is especially true considering there is no evidence that Plaintiff searched for a job after January 31, 2022. Under no circumstances should Plaintiff have been permitted to recover economic damages after February 1, 2022, as he ceased looking for new employment as of then.  Because the trial did not take place until October 2023, which was nearly two years after Plaintiff last looked for another job, there was no basis for a front pay damage award, which is designed to compensate a plaintiff for post-trial economic losses.  *See, Rousch v. KFC Nat. Management Co*., 10 F.3d 392, 400 (6th Cir.1993)("Roush voluntarily chose not to seek alternative or supplemental employment in order to make up for this reduction in her income, preferring instead to receive social security benefits. Based upon these facts, we conclude that as a matter of law, front pay was not appropriate in this case. In its order on post-trial motions, the district court found that an award of front pay was

appropriate because Roush had contended that she would remain in the work force on an extended basis due to her need to provide for a handicapped child. However, her intentional limitation of her income in order to continue receiving social security benefits terminates any entitlement to front pay which she may otherwise have had.").

There was no evidence upon which the jury could have found that Plaintiff remained in the labor force as of October 31, 2023, the date at which a front pay award could begin. This Court should affirm the decision of the District Court to grant Walbro's Rule 59(a) motion.

## CONCLUSION

Walbro respectfully requests that this Court affirm the District Court's Order granting Walbro's motion for judgment as a matter of law or, in the alternative, motion for a new trial.

Respectfully submitted,

Date:  May 9, 2025                    By:   /s/ *David M. Cessante*
                                          David M. Cessante (P58796)
                                          Brian D. Shekell (P75327)
                                          Clark Hill PLC

## <u>CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH 32(g)</u>

**Regarding Type-Volume Limitation, Typeface Requirements
and Type Style Requirements**

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,839 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14 Times New Roman.